UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BRANDAN TAYLOR,

    Plaintiff,

v.                                                    Case No. 3:24-cv-602-TKW-MJF

MARTIN O'MALLEY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Brandan Taylor brings this action under 42 U.S.C. § 405(g) to seek review of a final adverse decision of the Commissioner of the Social Security Administration. Because the Commissioner applied the proper legal standards, and the decision is supported by substantial evidence, the District Court should affirm the Commissioner's decision.

### PROCEDURAL HISTORY

On April 4, 2023, Plaintiff applied for disability insurance benefits and alleged that he became disabled on April 4, 2023. Tr. 96.[1] The Social

---

[1] All references to "Tr." refer to the transcript of the Social Security Administration record filed on August 12, 2024. Docs. 5–7. The page numbers cited herein are those found on the bottom right corner of each page of the transcript.

Security Administration denied Plaintiff's claim initially on August 24, 2023, and upon reconsideration on January 12, 2024. Tr. 96–116. On January 19, 2024, Plaintiff appealed the decision, Tr. 133, and on June 10, 2024, Plaintiff, testified at a telephonic hearing before an administrative law judge ("ALJ"). Tr. 59–98.

On June 25, 2024, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act from April 4, 2023, through the date of the decision. Tr. 29–58. On July 12, 2024, Plaintiff requested review of the ALJ's decision, which the appeals council denied on October 2, 2024. Tr. 1–7; 203–204. The ALJ's decision stands as the final decision of the Commissioner, subject to review by the District Court. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007). This appeal followed.

## STANDARD OF REVIEW

To be entitled to a period of disability and disability insurance benefits, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has promulgated a sequential evaluation process to determine whether a claimant is disabled. 42 C.F.R. § 404.1520. Under this process, the Commissioner must determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has severe impairments; (3) whether the claimant's severe impairments meet or equal the criteria listed in Appendix 1, 20 C.F.R. Part 404; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) whether the claimant can perform other work. 20 C.F.R. § 404.1520(a)(4).

The claimant bears the burden of establishing a severe impairment that keeps him from performing past relevant work. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278 (11th Cir. 2020). If the claimant establishes such an impairment, the burden shifts to the Commissioner at Step Five to show the existence of other jobs in the national economy that, given all of the claimant's impairments, the claimant can perform. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021). If the Commissioner carries this burden, the claimant then must prove that he cannot perform the work suggested by the Commissioner.

A district court's review of the Commissioner's final decision is limited. A court reviews the Commissioner's decision to ensure that the Commissioner applied the proper legal standards, and substantial evidence supports the decision. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). A district court reviews questions of law *de novo. See Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313–14 (11th Cir. 2021) (citing *Moore v. Barnhart,* 405 F.3d 1208, 1211 (11th Cir. 2005)). For factual determinations, a district court must determine whether the ALJ's decision is supported by "substantial evidence." *Id.* at 1313.

"Substantial evidence" is not an exacting standard. *Biestek v. Berryhill,* 587 U.S. 97, 103 (2019). Although substantial evidence is "more than a mere scintilla," it is not a preponderance; it requires only "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Id.*; *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Even if the evidence preponderates against the [ALJ's] findings," the district court "must affirm if the ALJ's decision is supported by substantial evidence." *Viverette,* 13 F.4th at 1314.

## THE ALJ'S FINDINGS

In denying Plaintiff's claim, the ALJ made the following findings under 20 C.F.R. § 404.1520(a)(4)(i)–(v):

1. Plaintiff had not engaged in substantial gainful activity since April 4, 2023, the alleged onset date.

2. Plaintiff had the following severe impairments: major depression; hypertension; post-traumatic stress disorder; chronic obstructive pulmonary disease; anxiety; attention deficit hyperactivity disorder; borderline personality disorder; polyarthritis; left knee arthritis; obesity; degenerative disc/joint disease of the thoracic and lumbar spine; and migraines.

3. Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

4. Plaintiff was unable to perform any past relevant work.

5. Considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 29–53.

Before making the fourth finding, the ALJ determined that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) with additional limitations as follows:

> The claimant is further limited to no more than occasional climbing of ramps or stairs; occasional balancing stooping, kneeling, crouching, or crawling; and never climbing ladders, ropes, or scaffolds. In addition, the claimant can perform no more than frequent reaching or handling. The claimant must also avoid concentrated exposure to environments with vibration or workplace

hazards. Furthermore, the claimant can only understand, remember, and carry out simple instructions; can maintain attention, concentration, and pace for two-hour increments in an eight-hour workday; and can adapt to no more than occasional and gradually introduced workplace change. Additionally, the claimant can have no more than frequent interaction with co-workers, supervisors, or the general public. Tr. 40.

In making these findings, the ALJ considered Plaintiff's testimony regarding migraine headaches that reportedly occurred three to five days per week, lasted up to several hours each day, and were relieved by reclining in a dark room. Tr. 41, 71.

After considering the evidence, the ALJ determined that "the medical record does not support the intensity, persistence or limiting effects of the claimant's . . . migraine[] related symptoms to the extent alleged." Tr. 45. The ALJ then evaluated medical source statements from the State Agency physicians and the consultative examiners—Watson Ducatel, D.O., Joey Ancheta, M.D., Feliz Subervi, III, Ph.D., and Milagros Subervi, Ph.D.—and concluded that the RFC was supported by the overall record, including evidence showing conservative treatment of Plaintiff's symptoms and Plaintiff's ability to adequately function in routine activities of daily living. Tr. 47–49.

## DISCUSSION

Plaintiff raises two issues on appeal: (1) whether the ALJ erred by failing to properly evaluate opinion evidence; and (2) whether the ALJ properly accounted for Plaintiff's severe impairment of migraine headaches in the residual functional capacity. Doc. 13 at 3.

### A.  The ALJ Did Not Err in Evaluating Opinion Evidence

Plaintiff first argues the ALJ erred by failing to evaluate a Compensation and Pension (C&P) Report as a medical opinion. Doc. 13 at 5–6. Plaintiff, however, has not shown reversible error because Plaintiff has not shown that C&P report contained a medical opinion as defined by 20 C.F.R. § 404.1513(a)(2)(ii).

#### 1.  *The C&P Examination*

On October 31, 2022, Plaintiff attended a C&P examination through the Department of Veterans Affairs to evaluate his alleged migraines with headache variants. Tr. 1352–53. The C&P Report, which predates the alleged onset of Plaintiff's disability, notes a medical history significant for headaches, nausea, vomiting, sensitivity to light and sound, and visual floaters. Tr. 1353. On examination, Plaintiff reported the following symptoms, which typically lasted less than one day:

constant head pain, pain on both sides of the head, nausea, vomiting, sensitivity to light, sensitivity to sound, and changes in vision.

Section IV of the C&P Report notes that Plaintiff has "very prostrating and prolonged attacks of migraines / non-migraine pain productive of severe economic inadaptability." Tr. 1354. The C&P Report however, does not reference any medical records or examination findings to support this finding.

Furthermore, Sections V and VI of the C&P Report do not indicate any "pertinent physical findings" or "diagnostic test findings" related to Plaintiff's diagnosis. Tr. 1354. Regardless, the examiner, Kathleen C. Smith, N.P., determined that Plaintiff's migraines impacted his ability to work by impairing his "ability to concentrate." Tr. 1355. Nurse Practitioner Smith did not elaborate on how Plaintiff's migraines impact his ability to concentrate during an eight-hour workday.

### 2. *The SSA Regulations*

An ALJ must consider all the evidence in the record when making a disability determination. *See* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3). Furthermore, the RFC assessment always must address medical source opinions. SSR 96-8p, 1996 WL 374184.

The regulations define a "medical opinion" as "a statement from a medical source about what you *can still do despite* your impairment(s) and whether you have one or more impairment-related limitations or restrictions in" various abilities, including the claimant's ability (1) to perform physical and mental demands of work activities, (2) to perform other demands of work, and (3) to adapt to environmental conditions. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2); *Parris v. Berryhill*, 2019 WL 13488511, at *3 (M.D. Fla. March 27, 2019) (citing SSR 96-5p 1996 WL 374183, at *4–5) ("A medical source's statement about what an individual can still do is medical opinion evidence that an adjudicator must consider together with all of the other relevant evidence (including other medical source statements that may be in the case record) when assessing an individual's RFC").

The regulations define "other medical evidence" as "evidence from a from a medical source *that is not objective medical evidence or a medical opinion*, including judgments about the nature and severity of the claimant's impairments, the claimant's medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis.'" *Ball v. Soc. Sec. Admin., Comm'r*, No. 24-12496, 2025 WL 1010204, at *2 (11th Cir.

Apr. 4, 2025) (quoting 20 C.F.R. § 416.913(a)(3)) (emphasis added) (alterations adopted)). Furthermore, the regulations provide that ""[d]ecisions by other governmental agencies and nongovernmental entities," including the VA, are "inherently neither valuable nor persuasive" such that the ALJ "will not provide any analysis about how [it] considered such evidence in [its] determination or decision, even under § 404.1520c." 20 C.F.R. § 404.1520b(c); *see* 20 C.F.R. § 404.1504 ("[W]e will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits.").

### 3. *Application*

In order for the C&P Report to be considered a medical opinion, it was required to meet four essential elements:

(1) it must be a statement;

(2) from a medical source;

(3) about plaintiff's abilities despite his impairments; <u>and</u>

(4) whether the plaintiff has one or more impairment-related limitations or restrictions based on several enumerated abilities.

*Staheli v. Kijakazi*, 2021 WL 5495694, at *3 (D. Utah Nov. 23, 2021), *aff'd sub nom. Staheli v. Comm'r, SSA*, 84 F.4th 901 (10th Cir. 2023). Because the regulations use the word "and" between the third and fourth element, a medical opinion requires both elements to be met. *Staheli*, 84 F.4th at 906 n.2; *see generally Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1332 (11th Cir. 2005) ("unless the context dictates otherwise, the word 'and' is presumed to be used in its ordinary sense, that is, conjunctively").

Here, Plaintiff has not shown that Nurse Practitioner Smith's statements in the C&P Report constitute "medical opinions." The C&P Report is not a "medical opinion" as defined by the regulation, because Nurse Practitioner Smith did not offer an opinion on what Plaintiff can still do despite his impairment. The list of Plaintiff's symptom and Nurse Practitioner Smith's opinion about Plaintiff's economic inadaptability are not "medical opinions" as defined by the regulation. *Ball*, 2025 WL 1010204, at *2 (noting that other medical evidence" includes "judgments about the nature and severity of the claimant's impairments, the claimant's medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis.'").

True, Nurse Practitioner Smith opined that Plaintiff's migraines impacted Plaintiff's ability to "concentrate," but the statement is devoid of any discussion about what Plaintiff's abilities are despite this impairment. This conclusion, therefore, does not meet the third element of the definition of a "medical opinion." *Staheli,* 2021 WL 5495694, at *3; *see generally Ball*, 2025 WL 1010204, at *3 (concluding that that the nurse practitioner's notes were not a medical opinion because they did not address the plaintiff's ability to perform demands of work despite the impairments); *Dye v. Comm'r of Soc. Sec.,* 2022 WL 970186, at *4 (M.D. Fla. Mar. 31, 2022) (concluding letter was not a medical opinion because the statements in the letter did not assess the extent to which the plaintiff could perform any particular function in a work setting).

Because the C&P Report is not a "medical opinion" as defined by 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2), the ALJ did not err in failing to evaluate the report as a medical opinion under 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

B. **The RFC is Supported by Substantial Evidence**

Plaintiff next argues that the RFC does not include limitations reasonably related to Plaintiff's migraines because the ALJ failed to

explain how limitations related to vibrations, hazards, and simple instructions relate to migraine headaches. Doc 13 at 6.

The ALJ's written decision addresses Plaintiff's migraines several times in the RFC analysis. Specifically, the ALJ notes Plaintiff's history of migraines treated through the Department of Veterans Affairs and acknowledges Plaintiff's testimony regarding migraine headaches. Tr. 41–42.

The ALJ's written decision articulates that Plaintiff's assertions about the limiting effects of his symptoms were: (1) inconsistent with Plaintiff's daily activities—such as driving, using a computer, and playing games; and (2) unsupported by objective examination findings in the medical record. Tr. 42. The ALJ's written decision also discussed medical records that indicated Plaintiff had intact neurological signs. Additionally, the ALJ relied on an August 2023 consultative examination that indicated Plaintiff had no complaints of dizziness, nausea, recent headaches, changes in sensation, weakness, imbalance, or memory loss. Tr. 42–43.

The ALJ's written decision also discusses a May 2024 consultative examination, during which Plaintiff complained of significant headache

symptoms, but discounts these subjective complaints by noting largely benign physical signs and conservative treatment recommendations, including massage and ibuprofen. Tr. 44.

Indeed, an independent review of the medical record does not support the degree of limitation alleged by Plaintiff regarding his migraines. Plaintiff has a 50 percent service-connected disability rating from the Department of Veterans Affairs for migraine headaches. Tr. 1056. Although Plaintiff reported significant migraine symptoms during the C&P examination on October 31, 2022—roughly six months before the alleged onset of disability on April 4, 2023—the record shows little in the way of headache complaints during the period at issue for his claim. Tr. 1352. Specifically, Plaintiff reported headache symptoms in March 2023 (due to a nasal obstruction) and again in August 2023 (due to COVID-19.) Tr. 1980–83, 2235. Otherwise, however, Plaintiff denied headache symptoms during the consultative examination on August 23, 2023. Tr. 1128. Also, throughout the remainder of the record, there is no evidence that Plaintiff sought from the Department of Veterans Affairs any treatment for migraines or related symptoms. *See* Doc. 6-4, 6-5, 6-6.

The psychological consultative examination report of May 1, 2024 entails subjective complaints of migraine headaches occurring at least five times a week, which Dr. Felix Subervi considered in providing his medical opinion. Tr. 2360, 2367. A corresponding independent medical evaluation conducted by Dr. Joey Ancheta also shows subjective complaints of "sharp, aching and stinging bilateral headaches," but no objective examination findings consistent active headache symptoms occurring between "three fourths and all" of Plaintiff's awake time. Tr. 2374, 2377–2378. The ALJ properly addressed this evidence and evaluated the available opinion evidence as required by Social Security Regulations. Tr. 47–49.

In finding the RFC "supported by the overall record," the ALJ noted that: (1) Plaintiff's "symptoms are adequately controlled with both conservative and over the counter medication," and (2) Plaintiff "is able to function adequately in routine activities of daily living with occasional and/or little assistance." Tr. 49. Both of these findings are consistent with the record as it relates to Plaintiff's migraine headaches, which did not require any treatment during the relevant period and did not prevent Plaintiff from performing driving, using a computer, and playing games.

Because the ALJ articulated specific reasons for the limitations assessed in the decision, which are supported by and consistent with the objective medical evidence related to Plaintiff's migraines, the ALJ did not err in assessing the RFC.

## CONCLUSION

Because the ALJ did not err in evaluating the opinion evidence or assessing the RFC, the undersigned respectfully **RECOMMENDS** that the District Court:

1. **AFFIRM** the Commissioner's decision.

2. **DIRECT** the clerk of the court to close the case file.

**SO ORDERED** this 16th day of December, 2025.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**The District Court referred this case to a magistrate judge to address preliminary matters and to make recommendations regarding dispositive matters.** *See* **N.D. Fla. Loc. R. 72.2;** *see also* **28 U.S.C. § 636(b)(1)(B)–(C); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting**

**party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**